**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**

IN RE:

KPSI INNOVATION, INC.,

Debtor.

NO. 25-11068

**DECLARATION IN SUPPORT OF MOTION TO ASSUME LEASE AND EXECUTORY CONTRACTS**

I, Serina Klein, declare the following:

1. I am the sole shareholder of KPSI Innovation, Inc. ("KPSI" or the "Debtor").

2. I am over 18 years of age and am familiar with KPSI's finances, books and records. I have personal knowledge of the facts herein, and I am competent to testify to each of the statements contained in this declaration.

3. KPSI subleases the real property located at 134 37th Street NE, Auburn, WA 98002 (the "Warehouse") from Steeltec Supply Inc. at a rate of $4,000 per month. There is no formal written agreement in place.

4. KPSI is a party to a Global Services Agreement dated February 20, 2023 (the "GSA") with UL Solutions. A copy of the GSA is attached hereto as **Exhibit A.**

5. The GSA is a contract that includes an annual fee. This fee covers the maintenance of an account that stores testing results for KPSI's various products. While the GSA provider owns

**WENOKUR RIORDAN PLLC**
ATTORNEYS AT LAW
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101
206.682.6224 (WENOKUR)
206.903.0401 (RIORDAN)

the test data, KPSI is granted access to it under the terms of the agreement. Additionally, the GSA includes quarterly inspections of KPSI's products to ensure compliance with requirements. It also allows KPSI to remain listed in the GSA provider's public "certified listings" library, showcasing KPSI's certified assemblies.

6. KPSI is also party to a Patent Services Agreement dated March 1, 2024 (the "Patent Agreement") with Jerome A. Klein. A copy of the Patent Agreement is attached hereto as **Exhibit B.**

7. The Patent Agreement allows KPSI to acquire a non-exclusive license to manufacture, market and sell products using FBT technologies. KPSI pays a 15% royalty on all products that are covered by the patented technology of the five (5) patents listed in the Patent Agreement.

8. Therefore, the Lease, GSA and Patent Agreement (the "Agreements") are crucial to KPSI's ongoing operations and assumption of the Agreements is in the best interests of KPSI and will benefit creditors because of the revenue generated by the Agreements.

9. KPSI is in compliance with the terms of the Agreements.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing statements are true and correct to the best of my information and knowledge.

Dated: July 9, 2025

*/s /Serina Klein*
Serina Klein

DECLARATION IN SUPPORT OF MOTION TO ASSUME LEASE
AND EXECUTORY CONTRACTS- PAGE 2 OF 2

**WENOKUR RIORDAN PLLC**
ATTORNEYS AT LAW
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101
206.682.6224 (WENOKUR)
206.903.0401 (RIORDAN)

# Exhibit A

Remove Watermark  Wondershare PDFelement

GSA 6000824456
12/21/2018



# GLOBAL SERVICES AGREEMENT

| Party No.: **5658127** |
| Agreement No.: **6000824456** |
| Processor ID No.: **27608** |
| (For Internal Use Only) |

The terms of this Global Services Agreement ("GSA") effective as of **20-FEB-2023** ("Effective Date") will apply to all Services to be provided to **KPSI Innovations, Inc** ("Client" or "you") by the UL Company identified or referred to in a Quotation or Project Confirmation ("UL Contracting Party," "we" or "us").  "UL Contracting Party" and "Client" may be collectively referred to as "Parties" or individually as "Party." Your principal place of business is **6200 119th Pl SE, Bellevue, WA, 98006, US.**

"UL Company" means a UL Contracting Party or an entity controlled by, controlling, or under common control with that UL Contracting Party, and "UL Companies" means all of them, collectively.  "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of more than 50% of the interests in such entity, by contract, or otherwise.

1.  **Services.**  The term "Service(s)" means the services that are identified in a Quotation or Project Confirmation which by its terms incorporates this GSA.  Each type of Service has its own specific additional requirements ("Service Terms") which we may amend from time to time. Any amendment will apply prospectively from the date the amendment(s) are posted to the website referred to in the next sentence. They are available at www.ul.com/ServiceTerms and will be provided to you in print or electronic format upon request.  The capitalized terms used but not defined in this GSA will have the same meaning as in the applicable Service Terms.

2.  **Service Agreements.**  A service agreement ("Service Agreement") will be formed by: (i) your acceptance of a written offer (including by email) made by us or on our behalf to provide Services (a "Quotation"); (ii) the issuance of a written acceptance (including by email) of your order by us or on our behalf (a "Project Confirmation"); or (iii) your written or oral request for Services and our commencement of such Services if neither a Quotation nor Project Confirmation is issued. In the case of Follow-Up Services, the Follow-Up Service Procedure is our Quotation to all Subscribers for Follow-Up Services regardless of which Subscriber receives the Quotation; and acceptance (in the manner set forth in the Follow-Up Service Terms) by any Subscriber of a Quotation for Follow-Up Services shall bind all Subscribers and form your Service Agreement for Follow-Up Services.  The terms "Subscriber," "Follow-Up Services" and "Follow-Up Service Procedure" are defined in the Follow-Up Service Terms.  Each Service Agreement will incorporate both the applicable Service Terms in effect on the date the Service Agreement is formed and this GSA.

    More than one Service Agreement may be formed which incorporate the terms of this GSA.  If you obtain more than one Service under separate Quotations or Project Confirmations, your Service Agreements may be with different UL Contracting Parties, as identified in each Quotation or Project Confirmation.

3.  **Scheduling, Pricing and Payment Terms.** Any pricing and delivery schedules quoted for Services are estimates only, and may be subject to change by us upon prior notice to you, depending on the requirements of the specific project.  Before we begin Services, we may require you to make a deposit (to be credited against the total charges). You will pay our fees and related expenses promptly upon receipt of an invoice.  You will be responsible for all taxes, duties or imposts which may be levied by a governmental body ("Taxes") other than taxes measured by a UL Company's net income related to any Service Agreement. We may add such Taxes to our invoices and collect them from you.  You will not deduct any wire or transfer fees or other offsets.  We may charge interest at 1% per month (12% per year), or the maximum legal rate, whichever is less, on all outstanding balances, from the due date until paid in full.  You agree to pay reasonable collection costs, including attorneys' fees, if necessary, in the event of untimely payment or non-payment.  If charges are not paid when due, we may deny or withdraw any Services to you.

4.  **Your Information.**  You represent and warrant that all information and/or data provided to us or another UL Company by you, or on your behalf ("Your Information"), will be complete and accurate and that you are in compliance with any relevant data protection laws in furnishing it to us, and agree that we may rely upon and process such information when providing you Services.  In addition, you represent and warrant that all of Your Information is owned or licensed by you, and does not infringe on the intellectual property rights of any third party.  If any of Your Information is inaccurate, we will not be liable for any performance or alleged non-performance of Services.  You agree that we may share Your Information (to the extent permitted by applicable laws and contractual obligations) with other UL Companies, agents, subcontractors or third parties, in order for us to:  (i) perform the Services; (ii) conduct surveys for input about us and our Services or the improvement of our Services; (iii) provide additional information about our Services to you; or (iv) act in the interest of public safety.

5.  **Confidential Information.**  Each Party acknowledges that in connection with the Services it may have access to or otherwise receive or observe confidential or proprietary information or materials of the other Party ("Confidential Information").  Confidential Information includes: (a) business and marketing plans and financial information; (b) plans, designs, sketches, and prototypes for products and services; (c) engineering and technical information such as

Remove Watermark    Wondershare PDFelement

software, test processes and methodologies, data, and test equipment and fixtures; (d) trade secrets; and (e) information concerning the disclosing Party's customers, business partners, or affiliates and their products or services. Confidential Information, however, does not include information or materials that are: (i) already known to the receiving Party at the time of disclosure; (ii) publicly available or that become publicly available other than through the acts or omissions of the receiving Party; or (iii) subsequently acquired by the receiving Party from other sources not in violation of any confidentiality obligations. Each Party agrees that it will not, in whole or in part, disclose, transfer, use, reverse engineer, or otherwise make available the disclosing Party's Confidential Information, except as necessary by the UL Companies or their subcontractors to perform the Services. Each Party agrees to treat all Confidential Information of the disclosing Party with the same degree of care it employs to protect its own Confidential Information and in no event less than a reasonable standard of care. We may disclose your Confidential Information: (i) to other UL Companies, agents, subcontractors or other third parties in connection with performing the Services; (ii) when deemed in our discretion to be in the interest of public safety; (iii) when required to be produced pursuant to an order or command of any judicial, regulatory, or accreditation authority; or (iv) when required by any common law or statutory duty. Each Party agrees at its expense to return or destroy, as instructed by the disclosing Party, all Confidential Information upon request from the disclosing Party, except that one copy may be retained solely for recordkeeping or accreditation purposes. Each disclosing Party retains exclusive ownership of all right, title and interest in its Confidential Information.

6.  **Samples.** If Services require sample examination, you will ship representative samples to us at your expense. Upon completion of the examination, such samples may be destroyed, unless other arrangements are agreed to in writing for the return of samples at your expense. The shipping, testing and sample preparation may damage or destroy any sample and you agree that you will not hold any UL Company liable for any such damage or destruction.

7.  **Subcontracting.** You agree that we may subcontract Services to any UL Company or other third parties subject to our requirements. We will provide as a term of any such subcontract that the subcontractor will meet our current qualification requirements, including complying with our confidentiality requirements. UL will be responsible for any breach of this GSA by its subcontractors.

8.  **UL Name or Marks.** One or more of the UL Companies own the rights to a family of trademarks, service marks, certification marks, trade names, logos, domain names, corporate identifiers and other intellectual property rights that contain or include "UL," "Underwriters Laboratories" and variations and derivatives thereof (collectively, the "Marks"). Except for your rights as specifically granted in a Service Agreement to use the Marks, you have no rights in the Marks. You will cooperate with the UL Companies in maintaining, renewing, enforcing, and protecting the Marks. You will not directly or indirectly challenge the Marks or the UL Companies' ownership of them. You will not seek to register any of the Marks, or any confusingly similar marks, anywhere in the world. You agree to notify us promptly if you are aware of any infringement or misuse involving any of the Marks or any conflicting trademark, service mark, or certification mark. You agree that any misuse of the Marks, or other UL Companies' intellectual property, will cause irreparable harm that cannot be compensated by money only. A Service Agreement may include additional obligations regarding the Marks.

9.  **Export Control.** You represent and warrant that you: (i) will not cause any UL Company to violate any export, trade or other economic sanction law; (ii) will promptly advise us if a project involves technology that is subject to any government controls, including, without limitation, U.S. export controls, and will promptly supply all information needed to comply with those controls; and (iii) will make payment to us for Services rendered under a Service Agreement with funds obtained and through financial institutions and accounts in compliance with applicable laws concerning the prevention of money laundering, terrorist financing and other illicit activities, including, without limitation, those enforced by the United States.

10. **Client Remedies.** We will provide Services in accordance with professional standards of conduct generally applicable to conformity assessment organizations and we will not have any responsibility other than to exercise reasonable skill, care and diligence in the performance of Services. In the event a tribunal described in Section 19 determines that we have failed to comply with such standards of conduct in providing Services and that such failure directly caused you harm, we will compensate you for such direct harm, PROVIDED, HOWEVER, that the amount of such compensation will not exceed the fees paid by you to us for the specific portion of the Services rendered that directly caused you harm, and that, under no circumstances will we be liable to you for any incidental, consequential, or punitive damages. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 10, WE MAKE NO OTHER REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY "IMPLIED WARRANTY OF MERCHANTABILITY" OR "FITNESS FOR A PARTICULAR PURPOSE." For the purposes of this Section 10 and Sections 11, 12 and 19, the term "Services" also includes the conception, development, promulgation, review, publication, modification, withdrawal, interpretation, use, or application of any testing standard or requirement at any time by any UL Company. Any limitations and exclusions of liability shall apply to the fullest extent permitted by law.

11. **THIRD PARTY CLAIMS.** YOU AGREE TO INDEMNIFY AND HOLD HARMLESS THE UL COMPANIES AND THEIR

TRUSTEES, DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, AFFILIATES, AGENTS AND SUBCONTRACTORS (EACH AN "INDEMNIFIED PARTY") FROM ALL LOSSES AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING OUT OF, OR RELATED TO, CLAIMS ASSERTED BY THIRD PARTIES THAT RELATE TO THE DESIGN, TESTING OR DATA PROVIDED BY YOU, OR THE MANUFACTURE, MARKETING, OR SALE OF YOUR PRODUCTS OR SERVICES (INCLUDING YOUR USE OF ANY OF THE MARKS), OR THAT RELATE TO THE SERVICES, UNLESS CAUSED BY AN INDEMNIFIED PARTY'S SOLE NEGLIGENCE. IF AN INDEMNIFIED PARTY BECOMES SUBJECT TO A THIRD PARTY CLAIM, IT MAY DEFEND ITSELF AT YOUR EXPENSE WITH COUNSEL OF ITS OWN CHOOSING.

12. **RELEASE AND WAIVER.** TO THE EXTENT PERMITTED BY LAW, YOU WAIVE AND RELEASE ALL OF THE UL COMPANIES AND THEIR TRUSTEES, DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, AFFILIATES, AGENTS AND SUBCONTRACTORS FROM ALL LIABILITY, CLAIMS, DEMANDS, ACTIONS, OR CAUSES OF ACTION FOR ANY ALLEGED LOSS, DAMAGE, OR INJURY, OTHER THAN A CLAIM FOR COMPENSATION FROM US PURSUANT TO SECTION 10. THIS RELEASE AND WAIVER COVERS ALL CLAIMS ARISING IN TORT AS WELL AS THOSE ARISING UNDER ANY STATE OR FEDERAL STATUTE, THAT IN ANY WAY ARISE OUT OF, OR RELATE TO, THE SERVICES OR PERFORMANCE OR ALLEGED NON-PERFORMANCE UNDER ANY SERVICE AGREEMENT.

13. **Our Functions.** You acknowledge and agree that we are not a designer, manufacturer, marketer, seller, endorser, guarantor, or insurer of your products or systems of any kind. By providing the Services we are not assuming and we disclaim any obligation, including any duty of care toward you or any third party related to the design, testing by entities other than a UL Company, or the manufacture, marketing, or sale of any product(s) or system(s) that you submit to us for Services. You agree that: (a) our provision of Services is not intended to supplant your examination and testing of such product(s) or system(s); (b) by our performance of Services, we are not assuming any duty that you have to examine or test the design of such product(s) or system(s), either before or after manufacture or sale; (c) we are not endorsing, or warranting the safety or performance of such product(s) or system(s); and (d) in rendering Services, we are not supplying, information for your guidance and conduct of your business.

14. **Our Documentation.** We retain all ownership, rights, title, and interest, in and to any reports, procedures, data, calculations, notes, or other materials in any form conceived, prepared, or generated or originated by any UL Company ("UL Documentation"). You are prohibited from distributing any UL Documentation by way of any medium, paper or electronic, to third parties without our prior written consent. Notwithstanding the foregoing, you may distribute UL reports in their entirety internally and to regulatory authorities if required to do so. All such reports must contain the following legend: "UL LLC authorizes the above named company to reproduce this Report provided it is in its entirety."

15. **Assignment.** You cannot assign any of your rights or obligations under a Service Agreement to any other person without our written consent. We may, upon prior notice to you, assign a Service Agreement or any of our rights or obligations under a Service Agreement to any other UL Company.

16. **Termination.** Except as otherwise specifically provided in the Service Terms, a Service Agreement will continue until terminated by either Party upon thirty (30) days' prior written notice to the other Party. In the event of your material breach of any Service Agreement with us or any other UL Company, we may immediately terminate any or all Service Agreements. Your failure or inability to pay your debts and obligations in the normal course of business as well as any filing of a petition in bankruptcy or any similar filing for protection from creditors will be a material breach by you of all Service Agreements. Upon notice of termination of a Service Agreement, we will take immediate steps to bring the Services to a close in a prompt manner. Upon termination, we are entitled to reimbursement in full for all Services provided and any other sums due pursuant to the Service Agreement up to the effective date of termination, including any other direct costs and expenses incurred by us in connection with the termination.

17. **Third Party Beneficiaries.** All other UL Companies, including UL LLC, are intended third party beneficiaries of each of the Service Agreements for purposes of enforcing all provisions of the Service Agreements, other than those provisions that create rights to receive income related to the Services. Except as provided above, each Party intends that no provision of a Service Agreement will in any way benefit any other third party or accord any third party any rights or remedies.

18. **Waiver or Modification.** Any failure by a Party to insist upon the performance of any provision of a Service Agreement will not constitute a waiver of any rights or a waiver of any right to future performance of that provision. For any waiver or modification of any provision of a Service Agreement to be effective, it must be set forth in a writing executed by both Parties' authorized agents.

19. **Dispute Resolution.** Any dispute or disagreement, other than nonpayment of fees, relating to this GSA, any Service Agreement entered into pursuant to this GSA, or any Services provided under any such Service Agreement, will be settled by confidential, binding arbitration administered by the International Centre for Dispute Resolution of the

Remove Watermark

Wondershare
PDFelement

American Arbitration Association ("AAA") pursuant to the AAA Commercial Arbitration Rules and the Procedures for Large, Complex Commercial Disputes. The arbitration venue will be Chicago, Illinois, except if: (i) your principal place of business is in Europe, the venue will be London, UK; and (ii) your principal place of business is in Asia, Australia or New Zealand, the venue will be Singapore, Republic of Singapore. The arbitration will be conducted before a panel of three (3) arbitrators. Each arbitrator will be an individual with substantial commercial transactional experience of at least fifteen (15) years in a corporate or judicial legal setting. The arbitration panel will be selected as follows: the Parties will request a list of ten (10) arbitrators drawn from the AAA's panel of commercial arbitrators (who are experienced in and familiar with the AAA's Procedures for Large, Complex Commercial Disputes). From this list, both Parties will each choose one arbitrator. After they have been notified of their panel selection, the two (2) arbitrators will agree on a third arbitrator from the list of ten (10), who will be the chair of the panel, and the panel will be final. The decision of the majority of the arbitrators will be the panel's decision. The arbitrators will not have the authority to add, change, or disregard any term of this GSA or any Service Agreement entered into pursuant to this GSA, award incidental, consequential, or punitive damages (including, but not limited to, loss of use, unjust enrichment, and/or lost profits), or exceed the remedies provided by Section 10 above, or the limitation of liability and release and waiver described in Sections 10 and 12 above. The panel's decision will be binding and judgment on the arbitration award may be entered by a court of competent jurisdiction. Arbitration will be the final remedy for any dispute between the Parties arising out of this GSA or any Service Agreement entered into pursuant to this GSA, provided, however, that nothing herein shall prevent any Party from seeking a court order for injunctive relief (in addition to other remedies) to stop or prevent misuse or misappropriation of its Marks, confidential or proprietary information, or infringement of its intellectual property, in a court of law. All arbitrations shall be conducted in English.

20. **Notice.** Any notice to you must be made by hand delivery, courier service, mail, electronic mail or facsimile at your principal place of business. Any notice to us or any other UL Company must be made by hand delivery, courier service, electronic mail, U.S. mail or facsimile c/o UL LLC, Attention: General Counsel, 333 Pfingsten Road, Northbrook, Illinois, 60062, U.S.A. Notices will be effective upon receipt.

21. **Severability.** If any provision of a Service Agreement is held invalid, void, or unenforceable, the remainder of the Service Agreement will not be affected, and each remaining provision of the Service Agreement will be valid and enforced to the full extent permitted by law.

22. **Governing Law/Jurisdiction.** This GSA, any Service Agreement entered into pursuant to this GSA and any Services provided under any such Service Agreement will be governed by the laws of the State of Illinois, United States of America, without reference to its choice of law principles. You acknowledge that you may be purchasing Services from UL Contracting Parties located both inside and outside of your home country, that UL Companies in other countries are third party beneficiaries of many of your agreements, and that we and you have a shared interest in a single uniform governing law for all Service Agreements in order to achieve greater predictability in our relationships.

23. **Insurance.** We reserve the right to require you to produce evidence that you maintain satisfactory insurance coverage for the purpose of meeting any third party liability.

24. **Survival of Terms.** The provisions in a Service Agreement that by their nature prescribe continuing rights and obligations shall survive the termination of the Service Agreement, including the following provisions of this GSA: Sections 3 (Scheduling, Pricing and Payment Terms); 4 (Your Information); 5 (Confidential Information); 8 (UL Name or Marks, including provisions in any Service Terms that relate to the Marks;); 10 (Client Remedies); 11 (Third Party Claims); 12 (Release and Waiver); 14 (Our Documentation); 17 (Third Party Beneficiaries); 18 (Waiver or Modification); 19 (Dispute Resolution); and 22 (Governing Law/Jurisdiction).

25. **English Language.** All documentation relating to a Service Agreement will be in English. Any translations of a Service Agreement provided to you are for your convenience only and, in all cases, the English version will govern.

26. **Complete Agreement.** Each Service Agreement will constitute the complete and fully integrated understanding between the Parties with respect to our performance of Services. The applicable Service Terms take precedence over any conflicting provisions in a Quotation, Project Confirmation or this GSA. Under no circumstances will any preprinted, additional, or different terms or conditions on your requests for Quotation, purchase orders, invoices, sales or marketing materials, or other business documents apply to any Services, modify any Service Agreement or bind us.

27. **Additional UL Contracting Parties.** Any UL Company, whether currently in existence or formed at a later date, which is not a party to this GSA may enter into a GSA with you in the form of this GSA by agreeing in writing to accept the terms of this GSA and submitting such signed agreement to us.

28. **Electronic Signature.** This GSA and Service Agreements may be executed and delivered by facsimile, PDF or by means of other electronic signature and such facsimile. PDF or other electronic signatures will be deemed to be valid and original.

GSA 6000824456
12/21/2018

**29. Force Majeure.** Neither Party shall be liable for any failure or delay in the performance of its obligations due to fire, flood, earthquake, elements of nature, acts of God, acts of war, terrorism, riots, civil disorder, rebellions, or other similar cause beyond the reasonable control of the Party affected, provided that such default or delay could not have been prevented by reasonable precautions and cannot reasonably be circumvented, and, provided further, that the Party hindered or delayed immediately notifies the other Party describing the circumstances causing the delay. This provision shall not act to delay or defer the payment of any sums which may be due and owing.

YOU AGREE TO THE TERMS OF THIS GSA AND WARRANT THAT YOU HAVE MADE NO ALTERATIONS TO ITS TEXT, UNLESS SET FORTH SEPARATELY IN AN ADDENDUM THAT HAS BEEN EXECUTED BY US. YOU REPRESENT AND WARRANT THAT THE UNDERSIGNED IS AUTHORIZED TO EXECUTE THIS GSA ON BEHALF OF THE CLIENT NAMED BELOW.

**UL Contracting Parties**

By: _Ryan D. Robinson_

Name: **Ryan Robinson**

Title: Signature of Authorized Representative of all UL Contracting Parties

**KPSI Innovations, Inc**
(Client's Full Legal Name)

By: _KEVIN KLEIN_
Signature of Authorized Representative of Client

Name: _____

Title: _Operations Manager_

# Exhibit B

Patent License Agreement

This agreement is made as of March 1, 2024 by and between Jerome A Klein an Individual residing in Sublimity Oregon, and KPSI Innovations Inc, a Delaware Corporation, located in Bellevue WA.

Witnesseth:

Whereas, Licensor Jerome A. Klein is the sole and exclusive owner of United States Patents, and other intellectual property;

Whereas Licensee KPSI Innovations Inc. desires to acquire a non-exclusive license to manufacture, market, and sell products using FBT technologies. "Licensed Products" shall be defined as products, technology, and certifications defined in schedule A;

Whereas Jerome A Klein has the power to grant Licensee such a license.

Now, therefore in consideration of the mutual promises and covenants herein contained, the parties hereto agree as follows;

1) Licensor hereby grants to Licensee, upon and subject to all the terms and conditions of this Agreement, a non-exclusive license to manufacture, market, and sell products for the sole use in the methods embodying the invention(s) described in the Klein Intellectual Property.

2) Licensor hereby grants to Licensee, upon and subject to all the terms and conditions of this Agreement, a non-exclusive right to use trademark(s) associated with content approved by Klein.

3) Licensor hereby grants to Licensee, upon and subject to all the terms and conditions of this Agreement, a non-exclusive right to use third party certifications, reports, and seek additional certifications of FBT Inc.

4) Licensor will assist KPSI Innovations Inc. in any manner required to address any legal issues surrounding the intellectual property rights.

5) Licensor will provide KPSI Innovations Inc. consulting for technical, manufacturing, sales, and operations as requested for a min. of 2 years

Compensation

A) In consideration for the licenses granted hereunder, Licensee agrees to make quarterly payments to Licensor starting Jan. 2025 a royalty of 15% of gross sales.

Licensor

_____
Date _3-1-2024_

Licensee

_____
Date _3/1/2024_

Schedule A

Assets:

1) US patent and patent applications related to:
   -9,284,730 – Control Joint Backer
   -10,626,598 – Smoke and Fire Rated Gasket
   -11,401,711 – Smoke and Fire Rated Gasket
   -11,512,464 – Smoke and Fire Rated Gasket
   -11,885,119 – Seven Layer Large Gasket